UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GRAND RIVER INFRASTRUCTURE, INC.

Debtor.

Chapter 11
Case No. 11-35206
Hon. Daniel S. Opperman

_____/

## FIRST DAY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

NOW COMES the Debtor in the above-captioned matter (the "Debtor"), by and through its counsel, Lambert, Leser, Isackson, Cook & Giunta, P.C., and for its First Day Motion for Order Authorizing Use of Cash Collateral (the "Motion"), hereby states as follows:

### CONCISE STATEMENT OF RELIEF REQUESTED
### PURSUANT TO FED. R. BANKR. P. 4001(b)(1)(B)

1. The Debtor requires use of Cash Collateral, as defined below, in order to pay operating expenses, including payroll, and to pay vendors to ensure a continued supply of goods and services essential to the Debtor's continued operations and viability.

2. Absent the authority to use Cash Collateral, the Debtor will be unable to operate its business and the value of the estate will be severely degraded. The Debtor could be forced to immediately and abruptly liquidate to the direct detriment of all parties in interest.

3. Upon information and belief, the only other party with who expresses a secured interest in the Cash Collateral is Fifth Third Bank, whose address is P.O. Box 630337, Cincinnati, OH, 45263-0337 (collectively, the "Secured Party").

4. In short summary, the Order requested by the Debtor in this Motion provides as follows:

a. <u>Use of Cash Collateral</u>. The Debtor shall continue to use cash collateral in the normal course of its business operations until the Effective Date of an order confirming a plan of reorganization for the Debtor or until other order of the Court.

b. <u>Adequate Protection</u>. The Secured Party, should their asserted liens be found valid, shall receive adequate protection for the Debtor's continued use of cash collateral as follows:

1) The Secured Party shall retain its liens in all post-petition Cash Collateral generated by the Debtor from the date of the Petition to the extent of any diminution in the value of the collateral and in the order and priority that such liens existed as of the Petition Date.

2) The Debtor shall keep all of the Secured Party's collateral fully insured.

3) The Debtor will deposit all cash acquired post-petition into the DIP account and will provide weekly reporting of deposits and expenditures to each of the Secured Party.

4) The Secured Party is clearly oversecured by as much as a 2 to 1 ratio and thus is provided adequate protection by the virtue of their substantial equity cushion.

## JURISDICTION

5. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

6. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

{00120980}2
11-35206-dof    Doc 7    Filed 11/14/11    Entered 11/14/11 17:11:27    Page 2 of 16

7. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 105, 363, 522; Fed. R. Bankr. P. 4001 and Bankr. E.D. Mich. L.R. 4001-2; and, as this is a contested matter Fed R. Bankr. P. 9014 and Bankr. E.D. Mich. L.R. 9014-1.

## BACKGROUND

9. On November 14, 2011 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

11. The Debtor manufactures and sells concrete bridge and sewer products.

12. It is believed that Fifth Third Bank will assert a secured lien against certain assets of the Debtor, except the Debtor's Cadillac facility and titled vehicles.

13. The Secured Party is the Debtor's primary creditor and, upon information and belief, it has asserted, or may assert a lien in the Debtor's deposit accounts and accounts receivable.

14. The Debtor will attempt to consensually negotiate the use of Cash Collateral with the Secured Party. However, should those negotiations be unsuccessful, it is expected that the Secured Party will oppose the Debtor's use of Cash Collateral. For that reason, the Debtor believes it is necessary to bring this Motion so that in the event

stipulated use cannot be reached there will be the shortest possible interruption to the Debtor's operations while the Court reviews this matter.

**APPLICABLE LAW AND ARGUMENT**

15. The Bankruptcy Code provides that a debtor in possession may not use, sell or lease cash collateral unless:

    (A) Each entity that has an interest in such cash collateral consents, or

    (B) The court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

    11 U.S.C. § 363(c)(2).

16. As of the date of filing this Motion, the Secured Creditor has not consented to the Debtor's use of Cash Collateral and therefore, pursuant to Section 363(c)(2)(B) a hearing on this matter is necessary.

17. As noted by Norton, "courts are given broad discretion to balance the protection of secured creditors, on the one hand, against the strong public policies favoring continuation of jobs, preservation of going concern values, and rehabilitation of distressed debtors, generally." 2 Norton Bankr. L. & Prac. 3d § 44:5, *citing* H.R. Rep. 834, 103rd Cong., 2nd Sess. 27 to 29 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994). Thus the courts are, in their equitable discretion, permitted to alter the rights of secured creditors after the provision of adequate notice and hearing. 11 U.S.C. § 552(b); *In re Q-C Circuits Corp.*, 231 B.R. 506 (E.D. N.Y. 1999).

18. Reiterating what was stated above, prohibiting the Debtor from the use of Cash Collateral would lead to the immediate cessation of operations at its facilities and

the consequential diminution in value of the Debtor's estate through the inevitable loss of business and employees that would follow.

19. Section 363(e) of the Bankruptcy Code further provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . ."

20. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a nonexclusive list of the means by which a debtor-in-possession may provide adequate protection, including (i) periodic cash payments, (ii) additional or replacement liens, or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361.

21. What constitutes adequate protection must, therefore, be decided on a case-by- case basis. *See, e.g., In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *see also, In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in that particular collateral during the period of use. *See In re 494 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. at 736; *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

22. The Debtors agree that the Secured Party shall retain its liens in all post-petition Cash Collateral to the extent of diminution in the value of the Cash Collateral

generated by the Debtor from the date of the Petition in the order and priority that such liens existed as of the Petition Date.

23. The Debtor shall keep all of the Secured Party's collateral fully insured.

24. The Debtor will deposit all cash acquired post-petition into the DIP account and will provide weekly reporting of deposits and expenditures to the Secured Party.

25. Further, the Debtor estimates the value of the property securing the Secured Party's alleged claims to be nearly twice the value of any secured claim that could be alleged by Fifth Third. The Debtor believes the equity cushion provided therein is further evidence of the Secured Party's adequate protection.

26. A budget for the use of Cash Collateral is attached to this Motion as Exhibit 2.

## NOTICE

27. No trustee or examiner has been appointed in these Chapter 11 cases. Notice of this Motion will be given pursuant to the requirements of L.B.R. 9013-1 for first day motions. The Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

28. No prior request for the relief sought in this Motion has been made to this or any other court in connection with this Chapter 11 case.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order substantially in the form attached hereto as Exhibit 1, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem proper.

|                          |     | LAMBERT, LESER, ISACKSON, COOK & GIUNTA, P.C. |
|--------------------------|-----|------------------------------------------------|
|                          |     | /s/ Adam D. Bruski                             |
| Dated: November 14, 2011 | BY: | _____                 |
|                          |     | SUSAN M. COOK (P31514)                         |
|                          |     | ROZANNE M. GIUNTA (P29969)                     |
|                          |     | ADAM D. BRUSKI (P70030)                        |
|                          |     | KEITH A. SCHOFNER (P41852)                     |
|                          |     | Proposed Counsel for Debtor                    |
|                          |     | 916 Washington Ave., Ste. 309                  |
|                          |     | Bay City, MI 48708                             |
|                          |     | Phone: (989) 893-3518                          |
|                          |     | abruski@lambertleser.com                       |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GRAND RIVER INFRASTRUCTURE, INC.

Debtor.

_____/

Chapter 11
Case No. 11-35206
Hon. Daniel S. Opperman

## INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

The Debtor in the above-captioned case, having filed a First Day Motion for Order Authorizing Use of Cash Collateral (the "Motion"); the Court having conducted a hearing and ruled on this matter;

**THE COURT FINDS AS FOLLOWS:**

A. On November 14, 2011 (the "Petition Date"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code"). Since the Petition Date, the Debtor has remained in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

C. No committee of creditors holding unsecured claims (the "Committee") or any other committee has been appointed for the Debtor as provided by § 1102 of the Code.

D. All of the Debtor's property which constitutes cash collateral pursuant to the Bankruptcy Code will continue to constitute cash collateral of the Secured Party ("Cash Collateral"), and must be segregated and accounted for, pursuant to § 363(c)(4) of the Code.

E. To continue the operation of its business, the Debtor represented to the Court that it must use Cash Collateral to meet its payroll and to pay its continuing obligations incurred in the ordinary course of its business. The Debtor agrees to use only that amount of Cash Collateral as is necessary to pay the necessary expenses of its business to avoid immediate and irreparable harm to the estate, and for the costs of administration of its estate pursuant to this Order.

F.  The Debtor has provided notice of this Motion to all creditors allegedly holding secured claims of record, all other entities known or discoverable after reasonable investigation by the Debtor who claim an interest in Cash Collateral, the creditors included on the list filed pursuant to Bankruptcy Rule 1007(d) and the United States Trustee as set forth in the proof of service filed herein, and such notice, constitutes sufficient "notice and hearing," without the need for notification of any further entities under 11 U.S.C. § 363, 11 U.S.C. § 102, and Bankruptcy Rules 2002, 4001 and 6007.

G.  Good cause has been shown for entry of this Order, among other things, the entry of this Order will minimize disruption of the business of the Debtor as a going concern and preserve the value of the Estate.

H.  This Order may be entered without further notice and this Court expressly finds that the motion was sufficient to afford reasonable notice of the material provisions of the terms of this Order and an opportunity for hearing.

I.  This order is entered on an interim basis and will become a final order automatically unless objections are received by _____.

**ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

(1) The Debtor may use its Cash Collateral pursuant to the terms of this Order until the Expiration Date (as defined herein) only for payment of expenses of the Debtor and for payment of all fees due to the Office of the United States Trustee. The Debtor shall not use Cash Collateral to pay or cure any pre-petition obligations of the Debtor including any arrearages under any lease, equipment or executory contract obligation without the written consent of the Secured Party or pursuant to order of the Court. Any funds not expended by the Debtor shall remain in the DIP account of the Debtor.

(2) The Expiration Date shall be the earliest to occur of (i) or (ii) the date of entry of any further or amending order of the Court regarding the use of Cash Collateral.

(3) The Secured Party shall retain its liens in all post-petition Cash Collateral generated by the Debtor from the date of the Petition to the extent of any diminution in the value of the collateral and in the order and priority that such liens existed as of the Petition Date.

(4) All funds received by the Debtor shall be deposited in the debtor-in-possession account of the Debtor ("DIP Account").

(5) The Debtor will provide, on a weekly basis, to the Secured Party a complete accounting of the deposits into and expenditures out of the DIP account in the prior week.

{00120983}2

11-35206-dof    Doc 7    Filed 11/14/11    Entered 11/14/11 17:11:27    Page 9 of 16

(6) The Debtor will keep all of the Secured Party's collateral insured against loss or damage resulting from fire, flood or other hazards, casualties and contingencies.

(7) The Debtor is authorized to use Cash Collateral, subject to the terms and conditions set forth herein, until the Expiration Date. Notwithstanding anything in this Order approving same to the contrary, this Order and its respective Expiration Date may be extended upon the consent of the Debtor and Secured Party, or the entry of an order of this Court after notice and hearing upon the same or different terms.

(8) The Debtor is authorized to use Cash Collateral in accordance with the budget attached to the Motion as Exhibit 2.

# Grand River Infrastructure, Inc.
## DEBTOR-IN-POSSESSION INCOME STATEMENT FORECAST
($000s)

DRAFT - for discussion purposes only

| | 14-Nov | 21-Nov | 28-Nov | 5-Dec | 12-Dec | 19-Dec | 26-Dec | 2-Jan | 9-Jan | 16-Jan | 23-Jan | 30-Jan | 6-Feb | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | $ 269 | $ 269 | $ 269 | $ 173 | $ 173 | $ 173 | $ 173 | $ 24 | $ 24 | $ 24 | $ 24 | $ 149 | $ 149 | $ 1,889 | 100.0% |
| **Cost of Sales** | | | | | | | | | | | | | | | |
| Raw Material | 68 | 45 | - | - | - | - | - | - | - | - | - | - | - | 113 | 6.0% |
| Purchased Parts | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Direct Labor | 17 | 16 | 15 | 15 | 13 | 11 | 11 | 11 | 8 | 8 | 8 | 8 | 8 | 149 | 7.9% |
| Cost of Sales | 85 | 61 | 15 | 15 | 13 | 11 | 11 | 11 | 8 | 8 | 8 | 8 | 8 | 262 | 13.9% |
| **Gross Margin** | $ 184 | $ 208 | $ 254 | $ 158 | $ 160 | $ 162 | $ 162 | $ 13 | $ 16 | $ 16 | $ 16 | $ 141 | $ 141 | $ 1,627 | 86% |
| **Manufacturing Overhead** | | | | | | | | | | | | | | | |
| Indirect Labor | 9 | 8 | 8 | 8 | 7 | 6 | 6 | 6 | 4 | 4 | 4 | 4 | 4 | 78 | 4.1% |
| Payroll Taxes | 5 | 5 | 5 | 5 | 4 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 38 | 2.0% |
| Employee Benefits | 13 | - | - | - | 4 | - | - | - | 4 | - | - | - | 4 | 25 | 1.3% |
| Freight | 22 | 22 | 22 | 14 | 14 | 14 | 14 | 2 | 2 | 2 | 2 | 12 | 12 | 151 | 8.0% |
| Repairs & Maintenance | 10 | 7 | 12 | 15 | 15 | 15 | 15 | 15 | 2 | 15 | 15 | 15 | 15 | 166 | 8.8% |
| Supplies | 5 | 4 | 4 | 3 | 3 | 3 | 3 | 2 | - | 2 | 3 | 4 | 4 | 38 | 2.0% |
| Utilities | 11 | 11 | - | - | - | 20 | - | - | - | - | 20 | - | - | 62 | 3.3% |
| Other Variable | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 4 | 2 | 4 | 7 | 7 | 7 | 80 | 4.2% |
| Depreciation | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 168 | 8.9% |
| Fixed | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 26 | 1.4% |
| Manufacturing Overhead | 96 | 78 | 72 | 67 | 69 | 83 | 63 | 47 | 30 | 43 | 67 | 57 | 61 | 832 | 44.1% |
| **Selling, General & Administrative** | | | | | | | | | | | | | | | |
| Insurance | - | 15 | - | - | - | - | 15 | - | - | - | 15 | - | - | 45 | 2.4% |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | - | 15 | 15 | 0.8% |
| Management Wages | - | 31 | - | 30 | - | 31 | - | 30 | - | 30 | - | 30 | - | 182 | 9.6% |
| Clerical and Sales Wages | - | 41 | - | 38 | - | 42 | - | 36 | - | 35 | - | 35 | - | 227 | 12.0% |
| Payroll Taxes | - | 6 | - | 6 | - | 6 | - | 6 | - | 6 | - | 6 | - | 36 | 1.9% |
| Property Taxes | 21 | - | - | - | 21 | - | - | - | 21 | - | - | - | 21 | 84 | 4.4% |
| Employee Benefits | 3 | - | - | - | 3 | - | - | - | 3 | - | - | - | 3 | 12 | 0.6% |
| Depreciation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Other S, G & A | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 24 | 1.3% |
| Total S, G & A | 26 | 95 | 2 | 76 | 26 | 81 | 17 | 74 | 26 | 73 | 17 | 73 | 41 | 625 | 33.1% |
| **Operating Profit** | $ 61 | $ 35 | $ 180 | $ 15 | $ 65 | $ (2) | $ 82 | $ (108) | $ (40) | $ (100) | $ (68) | $ 11 | $ 39 | $ 169 | 9.0% |
| DIP Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Professional Fees | - | - | - | - | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 135 | 7.1% |
| Deposits for Material Suppliers | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Deposits for Utilities | 40 | - | - | - | - | - | - | - | - | - | - | - | - | 40 | |
| Key Employee Retention Plan | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Contingency & Other | 5 | 5 | 10 | 5 | 5 | 10 | 5 | 5 | - | 10 | 5 | 5 | 5 | 75 | 4.0% |
| **Net Income** | $ 16 | $ 30 | $ 170 | $ 10 | $ 45 | $ (27) | $ 62 | $ (128) | $ (55) | $ (125) | $ (88) | $ (9) | $ 19 | $ (81) | -4.3% |
| **EBITDA** | $ 29 | $ 43 | $ 183 | $ 23 | $ 58 | $ (14) | $ 75 | $ (115) | $ (42) | $ (112) | $ (75) | $ 3 | $ 46 | $ 102 | 5.4% |

Prepared by Amherst Partners

## Grand River Infrastructure, Inc.
### DEBTOR-IN-POSSESSION CASH REQUIREMENTS
($000s)

| | Week Beginning: | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 14-Nov | 21-Nov | 28-Nov | 5-Dec | 12-Dec | 19-Dec | 26-Dec | 2-Jan | 9-Jan | 16-Jan | 23-Jan | 30-Jan | 6-Feb | Total |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Cash Collections | $ 378 | $ 378 | $ 378 | $ 274 | $ 274 | $ 274 | $ 274 | $ 182 | $ 182 | $ 182 | $ 182 | $ 173 | $ 173 | $ 3,304 |
| Advances - Out of Formula | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | $ 378 | $ 378 | $ 378 | $ 274 | $ 274 | $ 274 | $ 274 | $ 182 | $ 182 | $ 182 | $ 182 | $ 173 | $ 173 | $ 3,304 |
| **Cost of Sales** | | | | | | | | | | | | | | |
| Raw Material | 68 | 45 | - | - | - | - | - | - | - | - | - | - | - | 113 |
| Purchased Parts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Direct Labor | 17 | 16 | 15 | 15 | 13 | 11 | 11 | 11 | 8 | 8 | 8 | 8 | 8 | 149 |
| Cost of Sales | 85 | 61 | 15 | 15 | 13 | 11 | 11 | 11 | 8 | 8 | 8 | 8 | 8 | 262 |
| **Manufacturing Overhead** | | | | | | | | | | | | | | |
| Indirect Labor | 9 | 8 | 8 | 8 | 7 | 6 | 6 | 6 | 4 | 4 | 4 | 4 | 4 | 78 |
| Payroll Taxes | 5 | 5 | 5 | 5 | 4 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 38 |
| Employee Benefits | 13 | - | - | - | 4 | - | - | - | 4 | - | - | - | 4 | 25 |
| Freight | 22 | 22 | 22 | 14 | 14 | 14 | 14 | 2 | 2 | 2 | 2 | 12 | 12 | 151 |
| Repairs & Maintenance | 10 | 7 | 12 | 15 | 15 | 15 | 15 | 15 | 2 | 15 | 15 | 15 | 15 | 166 |
| Supplies | 5 | 4 | 4 | 3 | 3 | 3 | 3 | 2 | - | 2 | 3 | 4 | 4 | 38 |
| Utilities | 11 | 11 | - | - | - | 20 | - | - | - | - | 20 | - | - | 62 |
| Other Variable | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 4 | 2 | 4 | 7 | 7 | 7 | 80 |
| Fixed | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 26 |
| Manufacturing Overhead | 84 | 65 | 59 | 54 | 56 | 70 | 50 | 34 | 17 | 30 | 54 | 44 | 48 | 664 |
| **Selling, General & Administrative** | | | | | | | | | | | | | | |
| Insurance | - | 15 | - | - | - | - | 15 | - | - | - | 15 | - | - | 45 |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | - | 15 | 15 |
| Management Wages | - | 31 | - | 30 | - | 31 | - | 30 | - | 30 | - | 30 | - | 182 |
| Clerical and Sales Wages | - | 41 | - | 38 | - | 42 | - | 36 | - | 35 | - | 35 | - | 227 |
| Payroll Taxes | - | 6 | - | 6 | - | 6 | - | 6 | - | 6 | - | 6 | - | 36 |
| Property Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Employee Benefits | 3 | - | - | - | 3 | - | - | - | 3 | - | - | - | 3 | 12 |
| Other S, G & A | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 24 |
| Total S, G & A | 5 | 95 | 2 | 76 | 5 | 81 | 17 | 74 | 5 | 73 | 17 | 73 | 20 | 541 |
| **Funding of Operating Expenses** | $ 173 | $ 221 | $ 76 | $ 145 | $ 74 | $ 162 | $ 78 | $ 119 | $ 30 | $ 111 | $ 79 | $ 125 | $ 76 | $ 1,467 |
| **Other Cash Items** | | | | | | | | | | | | | | |
| DIP Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | - | - | - | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 135 |
| Deposits for Material Suppliers | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Deposits for Utilities | 40 | - | - | - | - | - | - | - | - | - | - | - | - | 40 |
| Key Employee Retention Plan | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Contingency & Other | 5 | 5 | 10 | 5 | 5 | 10 | 5 | 5 | - | 10 | 5 | 5 | 5 | 75 |
| **Weekly Funding Requirements** | $ 218 | $ 226 | $ 86 | $ 150 | $ 94 | $ 187 | $ 98 | $ 139 | $ 45 | $ 136 | $ 99 | $ 145 | $ 96 | $ 1,717 |
| **Ending Cash Balance (Deficit)** | $ 160 | $ 152 | $ 292 | $ 125 | $ 181 | $ 88 | $ 177 | $ 43 | $ 137 | $ 46 | $ 83 | $ 27 | $ 76 | $ 1,586 |
| Cumulative Cash Position | 160 | 312 | 604 | 729 | 909 | 997 | 1,174 | 1,217 | 1,354 | 1,400 | 1,483 | 1,510 | 1,586 | |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GRAND RIVER INFRASTRUCTURE, INC.

    Debtor.
_____/

Chapter 11
Case No. 11-35206
Hon. Daniel S. Opperman

# COVER SHEET FOR MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

The debtor has filed a Motion for Order Authorizing Use of Cash Collateral, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the stipulation of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |

{00120982}

1

| | | |
|---|---|---|
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (8) Provisions for the payment of prepetition debt. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | ____ Yes<br><br>_X___ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | ____ Yes<br><br>_X___ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | ____ Yes<br><br>_X___ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | ____ Yes<br><br>_X___ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | ____ Yes<br><br>_X___ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | ____ Yes<br><br>_X__ No | Page ____, ¶ ____ |

|  |  | LAMBERT, LESER, ISACKSON, COOK & GIUNTA, P.C. |
|---|---|---|
| Dated: November 14, 2011 | BY: | /s/ Adam D. Bruski <br> SUSAN M. COOK (P31514) <br> ROZANNE M. GIUNTA (P29969) <br> ADAM D. BRUSKI (P70030) <br> KEITH A. SCHOFNER (P41852) <br> Proposed Counsel for Debtor <br> 916 Washington Ave., Ste. 309 <br> Bay City, MI 48708 <br> Phone: (989) 893-3518 <br> abruski@lambertleser.com |

{00120982}

4